**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| HARRY T. NUCKOLS, | : | |
| | : | Civil Action No. |
| Petitioner, | : | 07-2319 (RBK) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| PAUL SCHULTZ, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

> HARRY T. NUCKOLS, Petitioner pro se
> #05521-082
> Fairton Federal Correctional Institution
> Fairton, New Jersey  08320

**ROBERT B. KUGLER, District Judge**

On May 17, 2007, Petitioner HARRY T. NUCKOLS (hereinafter "Petitioner") currently confined at Fairton Federal Correctional Institution, Fairton, New Jersey (hereinafter "Fairton"), filed his 28 U.S.C. § 2241 petition (hereinafter "Petition") and submitted his filing fee. See Docket Entry No. 1. Petitioner, sentenced on August 16, 2005, to seventy five months of imprisonment, see id. ¶ 5, challenges Respondent's denial to conduct a determination as to whether Petitioner is eligible to participate in the residential

drug abuse treatment program (hereinafter "RDAP") administered by Fairton.[1]  See id. ¶ 10.

## BACKGROUND

### I. Overview of the RDAP

The Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) amended 18 U.S.C. § 3621 to require the Bureau of Prisons (hereinafter "BOP") to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible prisoners, subject to the availability of appropriations.  See 18 U.S.C. § 3621(e)(1).  An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program."  18 U.S.C. § 3621(e)(5)(B)(i) and (ii).  As an incentive for the successful completion of the residential treatment program, the BOP *may*, in its discretion (but not must), reduce an inmate's sentence by up to one year.  See 18 U.S.C. § 3621(e)(2); see also Lopez v. Davis, 531 U.S. 230 (2001).

---

[1]  Petitioner is alleging that "Respondent's construction of [Program Statement (hereinafter "P.S.")] 5330.10 [under which Petitioner's request was denied by Respondent] violates the object and policy of the plain language."  Pet. ¶ 10.

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement. According to the regulations, in order to be considered eligible for the residential drug abuse program, the inmate must have a verifiable documented drug abuse problem, must have no serious mental impairment which would substantially interfere with or preclude full participation in the program, must sign an agreement acknowledging his program responsibility, and *must ordinarily be within thirty-six months of release* and the security level of the residential program institution must be appropriate for the inmate. See 28 C.F.R. § 550.56(a). Participation in the program is voluntary, but all decisions on placement are made by the drug abuse treatment coordinator. See 28 C.F.R. § 550.56(b). The application of § 550.56 is set forth in P.S. 5330.10.[2]

---

[2]
P.S. 5330.10 states in relevant part:

Eligibility. An inmate must meet all the following criteria to be eligible for the residential drug abuse treatment program. (1) The inmate must have a verifiable documented drug abuse problem. Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the Residential Drug Abuse Program Eligibility Interview followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The information must meet the diagnostic criteria for substance abuse or dependence indicated in the Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM-IV). This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator. Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis.

**II.   Procedural History and Petitioner's Contentions**

Upon arriving to Fairton, Petitioner wished to obtain an immediate

> definitive determination . . . as to whether . . .[he is] admitted to [Faiton RDAP and] may receive up to a one-year reduction [of his prison term] upon successful completion of the same [since Petitioner wished to] know if [he would] be eligible for a reduction of [his] sentence; and if not, why not. [Respondent responded to Petitioner's inquiry by stating that Petitioner]'s 'eligibility for the program and sentence reduction [would] be evaluated' once [Petitioner is] interviewed for eligibility for participation in RDAP within 36 months of [Petitioner's] release.

Docket Entry No. 1, at 68-69.  Petitioner found such response "not satisfactory," see id. at 69, and appealed Respondent's decision to postpone the determination until Petitioner is within thirty-six months of completion of his sentence to BOP's Regional Office.  See id.  Responding to Petitioner's inquiry, the Regional Director advised Petitioner that

> [p]ursuant to [P.S.] 5330.10, . . . inmates must be within 36 months of release to be interviewed for admission to the RDAP.  No determination can be made regarding [Petitioner's] eligibility for a sentence reduction until it is decided whether or not [Petitioner is] appropriate for the RDAP.

Id. at 70.  Dissatisfied with this explanation, Petitioner filed an appeal with the National Inmate Appeal demanding an immediate evaluation.   See id. at 72-73.  Responding to Petitioner, the Office of National Inmate Appeals stated that

---

P.S. 5330.10, Ch. 5, § 5.4.1, page 3-4 (emphasis removed).

> P.S. 5330.10 . . . stipulates that[,] ordinarily, the inmate must be within 36 months of release to be eligible for the DRAP. Inmates are selected for admission to residential programs based upon the time remaining on their sentence.

Id. at 74. Petitioner now contends that the BOP's reliance on the term "ordinarily" to deny Petitioner immediate evaluation as to his eligibility to RDAP and the sentence-reduction incentive violated Petitioner's rights. See generally, Pet.  While Petitioner's voluminous seventy-six page submission offers a hard-to-follow panoply of patchy legal arguments that Petitioner deems relevant, it appears that there are two key legal points upon which Petitioner relies and keeps consistently reiterating and/or paraphrasing (in addition to Petitioner's interpretations of P.S. 5330.10):[3]

1.  Petitioner's "Statement for Reasons for Sentence" executed by Hon. J. Garvan Murtha of U.S. District of Vermont, Petitioner's sentencing judge, ended with the line (underlined and asterisked by Petitioner) reading as follows: "The Court recommends the [BOP] designate [Petitioner] to a facility that will allow him to participate in a . . . comprehensive drug and alcohol treatment program and any early release program which is available to successful participants." Docket Entry

---

[3] The bulk of Petitioner's submission is dedicated to Petitioner's readings and interpretations of P.S. 5330.10 and C.F.R. § 550.56(b). See generally, Pet.

No. 1, at 63.  Petitioner believes that this statement created a "mandate" which the BOP was obligated to fulfill.  See id. at 69.

2. Petitioner's focuses on BOP's reliance on the term "ordinarily" (used by the BOP as a basis for BOP's phrase "inmates must be within 36 months of release to be interviewed for admission to the RDAP").  Petitioner believes that such BOP's phrase indicates that the BOP determined that it is lacking authority to conduct RDAP eligibility reviews at any time prior to the thirty-six months before release date.[4]

## STANDARDS OF REVIEW

Since Petitioner is proceeding pro se, his pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a

---

[4] It appears that--after interpreting BOP's phrase "inmates must be within 36 months of release" as BOP's express statement that BOP lacks authority to conduct early RDAP reviews--Petitioner makes two deductions.  One is that BOP's "lack of authority" claim violates the holding of Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), see, e.g., Docket Entry No. 1, at 16, and another is that BOP aims to violate the holding of Woodall by unduly delaying its obligation to "fulfill the mandate" of Petitioner's sentencing judge.  See Docket Entry No. 1, at 69 ("[Petitioner wishes to] learn whether the mandate of [his] sentencing court will be fulfilled").

measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Since the case at bar examines an agency interpretation, the standards set forth in Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), govern a Court's review of BOP's construction.  Specifically,

> [w]hen a court reviews an agency's construction of the statute which it administers,[5] it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. In the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Id. at 842-43 (footnotes omitted).  In this case, the question is when an inmate becomes eligible for a RDAP determination and reduction of sentence.[6]  Congress has not spoken to this precise

---

[5] P.S. 5330.10 fosters a certain narrow aspect of BOP's administration of the broad statutory mandates set forth in 18 U.S.C. § 3621(e).

[6] The Petition unambiguously indicates that Petitioner's interest in RDAP is limited to obtaining sentence reduction (rather than remedying any medical, that is, psychological or physical, condition caused by Petitioner's usage of controlled substances).

question and left it to the discretion of the BOP to determine when prisoners could be deemed conclusively eligible for the RDAP. Therefore, this Court is obligated to uphold any BOP's permissible construction of applicable statutory mandate(s).  See id.

## DISCUSSION

### I. The Court Has No Jurisdiction Over Petitioner's Action

Generally, if an inmate is incarcerated in New Jersey, the District of New Jersey has jurisdiction to entertain his matter pursuant to 28 U.S.C. § 2241.  See Coady v. Vaughn, 251 F.3d 480,485 (3d Cir. 2001)("Section 2241 is the only statute the confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence"); Noble v. United States Parole Comm'n, 887 F. Supp. 11, 12 (D.D.C. 1995)(§ 2241 proper to review portion of sentence imposed pursuant to D.C. Code); United States v. Smith, 101 F. Supp.2d 332, 338 (W.D. Pa. 2000)("The exclusive remedy for challenging the BOP's calculation of a federal sentence is a habeas corpus petition filed pursuant to 28 U.S.C. § 2241, directed to the district court in the United States District Court wherein the petitioner is incarcerated, and naming the warden of the federal

---

Moreover, even if Petitioner has a medical claim asserting that Fairton denies him medical assistance for his substance-related ailments, such claim cannot be entertained as a habeas matter but has to be raised in a civil rights complaint filed under 42 U.S.C. § 1983.

facility as a respondent"); see also 28 U.S.C. § 2241(d).

Section 2241(c)(3) states, in no ambiguous terms, that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). However, the only "violation" allegedly suffered by Petitioner is his need to wait for BOP's determination. The "need to wait for a determination," however, does not constitute a violation of one's constitutional rights. Therefore, Petitioner's claims simply does not present a palpable controversy. (Indeed, nothing in responses obtained by Petitioner from the BOP indicate that he would not be properly evaluated for his eligibility to RDAP, or that would be denied RDAP enrollment, or that he would be refused sentence reduction: in that respect Petitioner's claim is unripe and may never ripen. Moreover, nothing in Petitioner's Petition indicates that Petitioner's ability to participate in RDAP or to obtain statement reduction could be diminished in the event his evaluation is conducted when Petitioner is within thirty-six months of his release.) Having suffered no injury, Petitioner lacks standing to bring this action.[7]

---

[7]

Just five months ago, the Supreme Court, in MedImmune v. Genentech, 127 S. Ct. 764 (2007), abandoned the previously viable "reasonable apprehension" test and refocused the focus of declaratory judgment jurisprudence to "the question . . . whether the facts alleged, under all the circumstances, *show that there is a substantial controversy, between the parties having adverse legal*

The Third Circuit recently summarized the law governing standing as follows:

> Article III of the Constitution restricts the "judicial power" of the United States to the resolution of cases and controversies. See <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471 (1982). Subsumed within this restriction is the requirement that a litigant have standing to challenge the action sought to be adjudicated in the lawsuit. <u>Id.</u> Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts. <u>Id.</u>; <u>Wheeler v. Travelers Ins. Co.</u>, 22 F.3d 534, 537 (3d Cir. 1994). Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed. <u>Storino v. Borough of Point Pleasant Beach</u>, 322 F.3d 293, 296 (3d Cir. 2003).

<u>Taliaferro v. Darby Twp. Zoning Bd.</u>, 458 F.3d 181, 188 (3d Cir. 2006). With regard to the constitutional component of standing, the Supreme Court has declared:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an *injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.* Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992) (emphasis supplied; internal citations, quotations, and footnote omitted). "The party invoking federal jurisdiction bears the

---

*interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*" <u>MedImmune v. Genentech</u>, 127 S. Ct. at 771 (emphasis supplied).

burden of establishing these elements." Id. at 561.

The Petition, however, does not suggest that Petitioner suffers of any actual injury or that his protected interests have been violated. While Petitioner might suffer a certain degree of anxiety over life uncertainties, Petitioner's "need to know" is not a legally cognizable protected interest bestowing upon Petitioner due standing and availing this Court to proper jurisdiction over Petitioner's action. Since Petitioner lacks standing, his Petition will be dismissed for lack of jurisdiction.[8]

## II. BOP's Interpretation Was Reasonable

Even if this Court is to ignore Petitioner's lack of standing, Petitioner's Petition would still be subject to dismissal on merits, since BOP's application of P.S. 5330.10 to Petitioner was reasonable.

While Petitioner chooses to interpret of BOP's reliance on the term "ordinarily" (as a basis for BOP's phrase "inmates must be within 36 months of release to be interviewed for admission to the RDAP") as BOP's express statement that BOP lacks authority to conduct RDAP eligibility reviews at any time prior to the thirty-six months before release date, no BOP's language contained in

---

[8] For instance, all inmates have to wait to have their parole proceedings administered, even though the wait for a parole hearing determination could indeed be emotionally quite daunting.

BOP's responses to Petitioner indicates such lack of authority: this conclusion is nothing by Petitioner's self-serving conjecture. Rather, the language used by BOP appears to mean exactly what it says: (a) ordinarily, inmates must be within 36 months of release to be interviewed for admission to the RDAP, and (b) the BOP retains discretion to administer RDAP interviews and reach RDAP determinations at an earlier stages of confinement, for example, in extraordinary cases or for any other reason which the BOP deems sufficient.[9] Such interpretation in no way strips the BOP from its discretionary authority and, therefore, cannot violate the holding of Woodall, 432 F.3d 235.[10]

Moreover, the legal authorities upon which Petitioner relies are misplaced. For instance, Petitioner's demand that the BOP would "fulfill the mandate" of Petitioner's sentencing judge is without merit, since (a) suggestions made by the sentencing judge are statutorily relevant only with respect to an inmate's *place of imprisonment*, see 18 U.S.C. § 3621(b), and have no relevance as to the inmate's *eligibility for a early release program*, see generally

---

[9] Petitioner never asserted that his circumstances are "extraordinary" in any way. See generally, Pet.

[10] Conversely, Petitioner's suggested scheme (under which the BOP would be obligated to provide any inmate with a "definitive decision as to RDAP eligibility" immediately upon that inmate's demand) would strip the BOP of any discretionary power statutorily granted to the agency by Congress, thus violating the holding of Woodall.

see 18 U.S.C. § 3621; (b) even where suggestions made by the sentencing judge are relevant, the BOP must only consider those suggestions rather than "fulfill the mandate" of the sentencing judge, see Woodall, 432 F.3d 235; Caldwell v. Miner, 2006 U.S. Dist. LEXIS 45735 (D.N.J. June 30, 2006); and (c) the Petition provides this Court with no reason to believe that the BOP would fail to consider Judge Murtha's suggestions, that is, as a courtesy matter.

Petitioner's reliance on case law is equally misplaced. For instance, Petitioner's extensive discussion of Cort v. Crabtree, 113 F.3d 1081 (9th Cir. 1997), and its progeny, distorts the very nature of the Cort decision. While Petitioner attempts to cite Cort in support of his belief that "Congress . . . intended for prisoners to know [about] their eligibility" for prison programs as early as possible, neither the facts nor the holding of Cort have anything in common with Petitioner's proposition.[11]

Finally, Plaintiff's claims that BOP's application of P.S. 5330.10 distorts the underlying public policy. This claim is

---

[11] The facts of Cort are as follows: Pursuant to a regulation adopted by BOP to implement a sentence reduction under § 3621(e), three federal inmates *were qualified and actually enrolled* in a RDAP for "non-violent" offenders based upon their convictions for unarmed bank robbery. Before their completion of the program, the BOP issued a change notice reclassifying the offense as "violent" and reversed its order permitting a reduction of the inmates' sentences. The Appellate Court reversed and held that the BOP could not retroactively apply its change after classifying unarmed bank robbery as a "non-violent offense." See Cort, 113 F.3d 1081.

without merit. The underlying public policy is to rid the inmates from substance-abuse habits prior to their release into the society at large, in order to make them responsible citizens and enable them to lead a crime-free life upon their release. The very nature of RDAP indicates that BOP's 36-month ordinary time-frame is prudent: the value of DRAP program is at its highest for an average inmate prior to the inmate's release.[12]

While Petitioner reads into the language of P.S. 5330.10 and related provisions constraints incompatible with BOP's practice to make, ordinarily, RDAP determinations within thirty-six months of the inmate's date of projected release, the actual language of the agency's policy indicates that BOP's application of P.S. 5330.10 is reasonable and, therefore, should not be disturbed. See Chevron, 467 U.S. 837. Since Court Petitioner's substantive argument is without merit, his Petition will be dismissed for failure to allege a violation of the Constitution or laws or treaties of the United States.

---

[12] Moreover, since all RDAPs are administered subject to availability of appropriations, and since an inmate's date of release might be delayed, for instance, as a result of the inmate committing a criminal offense (punishable by a prison sentence) while in BOP's custody, it would be imprudent for the BOP to evaluate inmates for RDAPs and qualify them for early release many years prior to the date of such release and long before learning whether federal funds would be eventually available for these programs.

## CONCLUSION

For the foregoing reasons, Petitioner's § 2241 Petition will be denied.  An appropriate Order accompanies this Opinion.

```
                                  S/Robert B. Kugler
                                  ROBERT B. KUGLER
                                  United States District Judge
Dated:   June 8, 2007
```